Good morning, Your Honors. And may it please the Court, my name is Mark Ebert and I represent Mr. Karapetyan. The current standard for giving a willful blindness instruction comes from the 2011 Supreme Court case of Global Tech v. SEB, a case that was decided after the briefing in this, or the opening briefing anyway, in this case was completed. Specifically, there must be evidence that, one, the defendant subjectively believes that there's a high probability that a fact exists. Here that would be that the business that he was helping to engage in was fraudulent. And second, that the defendant must have taken deliberate actions to avoid learning the truth. The Supreme Court in Global Tech said that it was error to find a subject of belief for mere knowledge that there was a substantial and unjustified risk of whatever the fact is existing. That, the Court explained, was just recklessness. And the Supreme Court also said that it was error to require only deliberate indifference to such a risk without also requiring active efforts to avoid knowing the truth. The most important problem with the instruction in this case was that neither the trial court nor the prosecutor articulated an evidentiary basis for giving the instruction that was consistent with the proper test under either Global Tech or this Court's en banc case in Heredia. And the government's arguments, both in asking that the instruction be given and in arguing the case and closing argument, were inconsistent with those standards. Well, now, we have to take all the evidence with all inferences and any inferences that would come for that because I think you both, you allege insufficiently the evidence as well. Yes, that's right. So you have both of those. But it seems to me that you, you know, there's two types of evidence. There's direct and circumstantial. And circumstantial evidence is basically just as good as direct evidence when you're looking at all of that. And, you know, essentially, you have a person that is, you know, what he was supposed to be a, he was going to be a driver, I guess, for this. Allegedly, yes. So he's, you know, he's on the lease. He, you know, that he signs all these documents, the tax documents. He deals with the money part of things. It's supposed to be, this lab has no lab equipment in it, nothing whatsoever. And so his fingerprints couldn't be all over this any more than they are. And he has an explanation that supposedly the other person has bad credit or he's someone famous in Armenia and all of those things. That's his explanation. But there are certainly other inferences that you can take from that. So I'm having difficulty on your insufficiency of the evidence. But then looking at all of that evidence, it certainly seems to scream out for a dual instruction. Well, Your Honor, I think that although you're correct, of course, that circumstantial evidence is as good as any other evidence. Here the question is what his subjective beliefs were. And the circumstantial evidence of his subjective beliefs was not what happened that put him on notice that he should have known something. It's what he did. And here we have, number one, his own personal testimony, of course, that he was subjectively unaware for the reasons that he stated that this was a project. But if that's prejudice next to the other circumstantial evidence, just because he says, I didn't know, we don't have to accept that, right? I want to say two things. One is that once he testified and said, I didn't know, then the jury was entitled to disbelieve him. Absolutely they were entitled to disbelieve him. But as this Court said in the Barron case, which I cited, in a circumstance like this, if they believe that the guy is lying, then the only rational result of that is to believe that he knew what was going on, that he was subjectively aware and he was involved in the fraud. And the second thing is that the circumstantial evidence of what he knew, beyond what he testified to, was what he actually did himself. All of the other things that Your Honor has referred to, you know, he didn't drive, there was only a couple of desks and some telephones and documents in the office, that goes to what he should have known. That goes to what he was on notice of, which the Supreme Court in Global Tech indicated was merely a matter of negligence or recklessness. So is Global Tech, I guess, your best case in terms of, because we're talking about affirmative actions or omissions or whatever, and so what's your best authority to support the contention that this failure to ask more questions does not constitute deliberate avoidance of the truth? Global Tech, which says that, essentially, that you have to take deliberate action in order to discover things, whereas here the most you can say is what the district court said in giving the instruction, which is, quote, he asked no questions, he didn't think about it, he didn't find it strange, he accepted the notion that this was all because a Satrian was from a well-known family, end quote. But that is a classic definition of negligence. And, in fact, the Supreme Court said that. Isn't the failure to inquire a deliberate avoidance under some of the cases, when you're on notice of suspicious activity? I'll answer that, but then I also want to finish answering Judge Callahan's other question. I'm sorry. No, no. I think that the distinction between action and inaction is not always crystal clear, but I think that if you compare it with what is considered deliberate action to avoid learning the truth in the cases that found that, that you can see a big difference between that and simply saying I believed him and, therefore, I didn't inquire further. For example, in Global Tech, the person took deliberate action by getting a fake legal opinion. He asked a lawyer to give him an opinion as to whether he was infringing a copyright, but failed to tell the lawyer that, gee, this is a deliberate knockoff of one of my competitor's products, and we copied everything except the cosmetic features. In Heredia, the woman was driving the van, and she had everything within her personal possession and her personal control. She was actually subjectively suspicious, she said, and yet she didn't look to see, you know, what she was driving, what was in the van. That's different from actually subjectively believing something. And then to finish answering Judge – Did he tell the FBI that he knew what Medicare was and that he picked up the Medicare checks from USA Independent? He told the FBI five years later that he knew at that time what Medicare was. He did not, as I read the record, indicate that at the time he knew what Medicare was at the time that he was involved in the sanctions. Let me get in another question that's bothering me, because this case is very close on whether – on the issue of whether the dual instruction should have been given. I mean, it's almost a case where it seems like your client knew what the dual instruction was and managed to just pull up – I mean, I don't think that's the case. But assume we find that error, then we also have to find that it was harmless beyond a reasonable doubt. So how was it not harmless? Well, because as this Court said in the Aguilar case, which was an en banc case, that if the evidence – in Aguilar it said that, first of all, you shouldn't give the dual instruction as an alternative to actual knowledge. It is a type of actual knowledge, and here it was given as an alternative. And secondly, Aguilar said that if you can't tell whether the conviction was based on actual knowledge or willful blindness, then you have to reverse, because you're not supposed to speculate. You don't know which it is, and therefore it can't be harmless beyond a reasonable doubt. How does that work with the second claim that you're making, that there was insufficient evidence to show actual knowledge? Because my reading of all of this tends to show me that the dual instruction was unnecessary. It shouldn't have been given. I think it seems like you could draw an inference of knowledge as strongly as, you know, suspicion and deliberate avoidance. So is there prejudice if the record supports a finding that he was aware, or do we have to say that? But I think that you can't tell, given the evidence here. Certainly the direct evidence was he wasn't aware. You don't know which way the jury – And the circumstantial evidence, which I wanted to get to, but I may not have time, was that he acted in a way that showed that he was not aware by, for example, giving his true name and personal information to everybody all along the bank, the Secretary of State, the FBI, the police. And there's additional circumstantial evidence as well. But, yeah, I think that there's prejudice because the evidence had to show either actual knowledge or no knowledge. And that's what Barron says. If somebody gives a completely – what to some people anyway, some people who are not Armenian farmers, is a completely ridiculous explanation, then the only alternatives are knowledge or no knowledge. And I don't know if I'm – I'm over my time. I don't know. I'm sorry. You can finish your answer. I'm sorry? Oh, to Judge Callahan's question, I just wanted to say that the circumstantial evidence of Mr. Karapetian's personal, whether he had actual subjective knowledge, was that he, number one, as I said, he gave his true name and personal information to everyone along the way in running the business. Number two, he asked the bank officer to refer doctors to his business, which would have exposed the fraud if he had known it. Number three, he didn't object to an on-site visit by the bank. Four, he went voluntarily to the FBI, cooperated and told them everything that he did and didn't know. Five, he called the police when he had a problem and gave a sovereign as a witness, as well as his own personal information. Six, he – there's really no evidence to dispute that he couldn't read or write English or type and that the Armenian and English alphabets are extremely different and that he never questioned a Satrian. So I would consider that the circumstantial evidence that answers your first question. Can I ask one other question? Yes. What happened to a Satrian? I'm sorry? What happened to a Satrian? He died. He died. Okay. That's right. So a Satrian died before trial? Yes, Your Honor. Stephen Arker for the United States. According to the defendant's testimony at trial, after the bank had frozen the money in the account where the defendant had deposited the Medicare checks, the defendant was told that there was a problem with the business. The defendant did not – the defendant failed to inquire at the bank, failed to investigate. How could there be a problem with the business if I just deposited half a million dollars in two weeks? The defendant said that he kept in touch with a Satrian over the next, I believe, about two years, and then the defendant doesn't supply any answers as to – or there's no testimony in the record as to what actually happened to a Satrian. I happen to know, I think what's outside the record, that the Satrian did die in an accident unrelated to this case. If I could address the first point that was raised by defense – by the appellant's counsel regarding GlobalTech. GlobalTech was a civil case decided by the Supreme Court, but it didn't change anything about the two-prong standard that was decided by this court in Jewell and then by the en banc decision in Heredia. In footnote 9 of GlobalTech, it cites various cases on the willful blindness Jewell instruction, and specifically cites Heredia. It also cites cases from other circuits where the standard is, and I'm quoting from – this is the Flores case from the Eighth Circuit, that ignorance is deliberate if the defendant was presented with facts that put her on notice, that criminal activity was particularly likely. And if I could just now step out and paraphrase, there were facts that put Tarapetti, the defendant, on notice that criminal activity was likely, and not only put the defendant on notice, but that he subjectively believed there was criminal activity. And that's based on defendant asking Mr. Satrian, you hired me because I have no skills, I have no medical background, I don't have any money. You hired me to deliver the goods because I have a truck. Again, I think he had a vegetable truck. So very implausible situation. But you hired me to deliver goods, and you don't have me delivering any goods. So we have an example in the record that the defendant... But that's an example where we did inquire. Well, that's to show, you know, there's evidence, and the evidence can support one of both prongs. And I wanted to say that this wasn't a case where the defendant should have known, where it was reckless or negligent. This was a case where the defendant had suspicions, and I gave that specific example, that he did question Satrian about why aren't I delivering the goods. So my problem with this case is that what are the deliberate actions to avoid here? I mean, he did ask Satrian. There's evidence he asked Satrian a couple different times about various things. So he's asking, and he's getting an answer that maybe he's not the brightest bulb, that he's satisfied with the answer. Well, and to that question, that's a rejoinder about the brightest bulb I would answer, and it was raised in the Appellantry Pride Brief about the example of the Brooklyn Bridge and people buying or giving money to buy the Brooklyn Bridge and be so gullible. I think based on, you know, what Judge Callahan was saying about the inferences to be drawing the light most favorable to the government, I think the jury was entitled or could have believed that Mr. Karapetian was gullible enough to buy the Brooklyn Bridge, but the jury wasn't required to believe that he was gullible enough. So I think the jury could have rejected the defendant's testimony that he questioned Satrian and he got those answers, and that's why he didn't inquire anymore. Well, let me ask you another question. Do you really think – to me, this also seems like the government overreached and created an error that didn't need to be there, because do you really – did the government really need the instruction at all to prove its case, given that he asked those questions? That evidence, that is circumstantial evidence of some kind of knowledge, right? It is, Your Honor. And if your argument was that – and the answers he received were incredulous, why not just put that to the jury? Why add in this instruction that just creates problems? Because the instruction was appropriate and precisely because the defendant's story at trial was, I didn't actually know of the fraud. The defendant, by his version of events and by his own testimony, put into play that he didn't have actual knowledge. And in addition, this was a case where the details of the fraud involving the Medicare claims for services that were never given, for doctors that were never there, there was no direct proof, there was no affirmative proof that the defendant, Karapetian, had a knowledge of the specificity of the Medicare claims, that he had actual knowledge of the details of the Medicare fraud. So it was a case of circumstantial evidence. And given that the defendant's story, which parts of it the jury was entitled to believe, but parts of it certainly the jury didn't have to, put into play that the defendant was claiming, I don't have actual knowledge. And this was a case where there was not direct evidence of actual knowledge. And for that reason, this was a case where it, to use Judge Callahan's word, I think cried out for the willful blindness. And as far as the jury has to find – I mean, did the jury get a special verdict so that it found no actual knowledge and then went on to find deliberate indifference? No. The jury was instructed that they – what actual knowledge was, and the jury was specifically instructed that they could find actual knowledge by finding that the defendant had a high probability or awareness, suspicion of the fraud, and that he took deliberate action. But to answer – Let me kind of put the – I want to understand your lens. All right. Obviously, we know at this time that the defendant got convicted. All right. And it doesn't sound like that the jury was really believing him. All right. They convicted him. But as a prosecutor, when you're trying the case, you don't know under what theory someone's going to convict someone. So what is your best argument for the fact that you could give both of those I think as appellant's counsel was saying under Barron. Ms. Brown, I believe that comes from Heredia, where the court said that the government, like any litigate, is entitled to a theory on which the jury can be instructed as long as there is a sufficient evidence basis in the record. And it's a – So are you saying that we can't, 20-20 hindsight, say you shouldn't have given the instruction because there was a legal basis to give at that – to go on both of those theories at that time and you weren't precluded from that? Is that what you're saying? That's correct. And that was – there was language in Heredia that supported that. And as far as the – I believe what Judge Worler was getting at with the harmless error analysis, that this court in Alvarado held that giving a dual instruction where the evidence supported only actual knowledge was harmless error because the evidence of actual knowledge was overwhelming. Now, if this Court were to conclude here that the facts supported only actual knowledge, not willful blindness, then the giving of the dual instruction would be harmless for the same reason. And the case cited by the defendant, particularly the Aguilar case, is not on point because in that case the Court gave a legally incorrect dual instruction and it didn't allow the jury to convict on less than actual knowledge. Okay. The counsel argued here, though, that they – he was entitled to know that the prejudice stems from not knowing under which theory the jury found knowledge, whether they found actual knowledge or imputed knowledge. But I believe, you know, along the lines of what Judge Callahan was saying, you have direct evidence. Why don't you give me your argument, not Judge Callahan's argument? Okay. I just like to hear the government's answer. The jury could have found – the jury was instructed you can find knowledge either by actual knowledge or actual knowledge – or you can find it by the dual instruction, the two prongs. The jury wasn't asked to speculate. Is there a case law says that the defense counsel is wrong to argue that he's entitled to know which – he was prejudiced because he doesn't know on what basis the jury found knowledge? Or is there a case that says there's no – that's – that isn't prejudice? Well, I believe the Alvarado case says that if the court finds that there was, and there was in this case, as I believe Judge Wardler, you're saying, overwhelming evidence of actual knowledge, then there's no prejudice to the defendant because the jury's verdict can be sustained on the fact that there was, taking evidence in light most favorable to the government, a proper finding of actual knowledge. So there's not prejudice. If the – I see the Court – I think you're saying that as long as the jury found knowledge, it doesn't – which theory in which they found it is not – does not give rise to any prejudice. It's not – doesn't really matter as long as one theory is supported by the evidence. That is correct. And that's based on Heredia saying the government is entitled to, you know, argue the alternatives as long as on an evidentiary basis. And on the harmless error analysis, if there's – which the government submits, and it sounds like from your questions as well that you thought it was unnecessary. So, yes, there was overwhelming evidence of actual knowledge. Then there's no prejudice to the defendant. Right. And just give me the litany of acts that you thought that the government put in as evidence of deliberate avoidance. Yes, Your Honor. And if I can just give the example of Global Tech where the term deliberate action was used. It's a concept where willful blindness – you can have the example where someone puts their hands over their eyes, they're affirmatively doing something. But you could also have the example that the person doesn't turn around. So in both cases, that's willful blindness. Well, what is it here? What are the facts here of the willful blindness? Yes, Your Honor. The cases that I read in this area, they list. They, you know, they list these six things. Yes, Your Honor. Okay. And I believe the different examples are, again, faced with the suspicion of a fraud. Because I think it does make a difference. It's not just not acting. Well, right. It's two prongs. There's a knowing awareness, i.e., suspicion. And then there's deliberate – acts of deliberate avoidance. So what are the acts of deliberate avoidance? Yes, Your Honor. I want to say that the acts of deliberate avoidance become more critical in the context of once the defendant is confronted with the suspicion of fraud. Well, I think you're, like, deliberately avoiding. Just tell her what the acts are. Deliberate avoidance. I don't do that. We want to hear the answer. Yes. When Mr. Esatrian tells the defendant not to ask questions, when Mr. Esatrian tells the defendant – Wait, wait. Is that D's acts? I mean, so the defendant's acts. I'm asking for the defendant's acts of deliberate avoidance. Well, and because of that, the defendant doesn't ask questions. It's when Mr. Esatrian – well, that's probably in the context of Mr. Esatrian. I want to know what Mr. Esatrian did. I want to know what the defendant did. So if I were to write this and I was to write it in your favor, I could list the things that the defendant did, not do. Yes, Your Honor. Well, the defendant followed Mr. Esatrian's advice to say the less people know about it, the better. That's in the record at – well, it's in the government's excerpt of record at page 115. The defendant concealed when he went to the bank that Esatrian was part of the business when he opened the Citibank account. That's in the government's excerpt of record at 139. That shows that when Mr. Esatrian told the defendant don't tell other people about it, the less people know, the better, the defendant affirmatively took that step. And when he opened the bank account and he was asked, you know, who's the owners, Mr. Carapetti and the defendant only said himself. Another example. The defendant didn't question Mr. Esatrian about the truthfulness of this company and the defendant's role about whether he's a delivery person or not. The defendant didn't question Mr. Esatrian's remark that the business was not working. This is the government's excerpt of record at page 102. And this is important, that he didn't question Mr. Esatrian's remark that the business isn't working in the context of having received more than a half a million dollars after the defendant admitted paying no expenses other than a small empty office and a telephone. Another example is the defendant didn't investigate why there were no expenditures for merchandise. This is in the government's excerpt of record at 147 and 144 to 145. The defendant didn't investigate why the bank froze the money of U.S.A. and the business, U.S.A. Independence, shortly after the defendant had posited $500,000. This is in the government's record at 127. And so those are specific examples from this case and the case law about what deliberate action can be. Again, in the Global Tech case, the action was inaction. It was the CEO of the company that was involved with the infringing product not to tell something to the lawyer that he was asking for the right to use patent. So it wasn't something that the CEO did affirmatively. It was something that the CEO didn't do. In the case of the drug courier cases in Juul and Heredia, the deliberate avoidance is in Juul, there's a secret compartment that has drugs and there's a scent of the drugs from the car. And the deliberate avoidance is the courier does not look through the open up the compartment. That constituted deliberate avoidance. In Heredia, similarly, it's a courier case when the defendant is driving in the truck or the van on the road, and then the defendant becomes suspicious that there's drugs. The defendant doesn't pull off the road. And the court in Heredia said it's the failure to investigate at that point. So that's the action that the court has held, failure to investigate. And I hope that I provided some examples of what the defendant did when faced with the knowledge with the suspicion of fraud, because I do agree that it's important that what I believe constitutes deliberate avoidance is it's something that where you change your behavior, you change your conduct from what otherwise you would have done or pursued, given something that happened, in this case, suspicion of fraud. So the defendant was asking questions of Mr. Esatrian. And it's at the point in time when the defendant stops asking questions after suspecting fraud and after being told by Mr. Esatrian, don't ask questions. The less people know, the better. Don't tell people about it. And the defendant then at that point fails to investigate. That failed to investigate, although it's conceptually inaction, it's, I believe, in the view of the way the case is talked about, that second prong, that is deliberate avoidance. Thank you. Thank you, counsel. We'll give you a minute or two. Thank you. Very quickly, first of all, in addition to the Aguilar case, the Sanchez case, Ninth Circuit also establishes that a situation like this cannot be harmless error if you can't tell which of the two theories he was convicted on. Next, the government is. Well, how do you tell which of the two theories if you present the jury with alternate theories? Pardon me? If you present the jury with alternate theories and they come back with a verdict that says guilty, how do you know which theory they adopted? You don't. You don't. Well, you said if you can't tell. I'm sorry? You said if you can't tell. How do you ever tell if you've given a. . . If you have a special verdict, you tell. What's the legal requirement that an alternate theory should always have a special verdict? I don't know any legal basis for that. I'm not sure that there's a requirement that they always have a special verdict, but it still remains a fact that you cannot tell in this case, as in the Aguilar and Sanchez cases, which of those theories was. . . Part of the way that you presented this case seems to me made it cry out for having to go on alternate theories because you present your client as a poor Armenian that doesn't understand very much, that isn't, you know, whether he's not very smart or whether it's language issues or he's not very sophisticated or all of those things. So on that level, that he could have been a person that didn't have actual knowledge, but he still could have had the ability with everything he was confronted with, that he had suspicions and he turned a blind eye. And so that's not exactly. . . That would justify giving both instructions. But, Your Honor, under Heredia, there has to be an evidentiary basis for giving that willful blindness instruction. That evidentiary basis has to conform with both Heredia and now with Global Tech. And as I said when I first started my argument, the justification that was given by the trial court as well as the argument by the prosecutor for why it should be given did not conform with any of those requirements. In other words, they were all, here is what he didn't do, here's what he should have known, here's what the red flags were. And by the way, I don't think that not telling third parties something constitutes deliberate avoidance of failing to find out oneself. In other words, you don't. . . By not saying something to the bank officer, that's not how Mr. Karapetian could have deliberately avoided anything. And also the government talks about how suspicious it is that Mr. Karapetian was told, the less people know about this, the better. What the government did not indicate was that that was in the context of his saying, I have a famous family, I have bad credit, and my father is, as the prosecutor himself acknowledged, the Michael Jackson of Armenia. And there was a reason for that, which Mr. Karapetian testified that he believed that that was credible. And so, yes, if Mr. Karapetian was faking it all, you know, if he really were an annoying participant, then the jury would have found that he was lying in his testimony, but that would have shown actual knowledge. As they said in Barron, as the Ninth Circuit said in Barron, it doesn't show willful ignorance or willful blindness under either the global tech or horeca standards. Thank you, Your Honors. Thank you. Thank you, counsel. Case to argue will be submitted. The next case for oral argument is United States v. Marat Salavera. Thank you.
judges: Reinhardt, Wardlaw, Callahan